IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RFA INVESTORS, L.P., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:22-cv-1582 |
| CHARLES H. JAMISON, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff RFA Investors, L.P., ("RFA") by and through its attorneys Novack and Macey LLP, for its complaint against Defendant Charles H. Jamison ("Jamison") alleges and states as follows:

### NATURE OF THE CLAIM

1. This action arises from the failure of Jamison to pay his proportionate one-half share of amounts paid on a letter of credit he entered into jointly and severally.

### PARTIES AND JURISDICTION

2. RFA is a limited partnership headquartered in Illinois.

3. The general partner of RFA is RFA Management Company LLC. The members of RFA Management Company LLC are the following trusts, whose trustees are citizens of Illinois: Nanci Agostini Revocable Trust; Ilene Ross Revocable Trust; William Ross Marital Trust; Nanci Agostini 2019 Dynasty Trust; Ilene Ross 2019 Dynasty Trust; Abigail Ross 2019 Dynasty Trust; and Caitlin Ross 2019 Dynasty Trust.

4. The limited partners of RFA are the following trusts, whose trustees are citizens of Illinois: Nanci Agostini 2019 Dynasty Trust; Ilene Ross 2019 Dynasty Trust; Abigail Ross 2019 Dynasty Trust; and Caitlin Ross 2019 Dynasty Trust.

5. John Riley and Andrew Agostini, who are both citizens of Illinois, are the co-trustees of the trusts identified in paragraphs 3 and 4 above.

6. Jamison is citizen of Pennsylvania.

7. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1332 based on complete diversity of citizenship of the parties and an amount in controversy that exceeds $75,000, exclusive of interest and costs.

### FACTS

8. In or around April 1995, Jamison and Edward Ross ("Ross") became shareholders in Lakeshore Entertainment Corp. ("Lakeshore").

9. As part of their investment in Lakeshore, both Jamison and Ross were required to provide Lakeshore with an irrevocable letter or letters of credit issued in favor of a beneficiary bank designated by Lakeshore.

10. Based on their ownership interests in Lakeshore, each of Jamison and Ross was required to provide letters of credit in the amount of $2,500,000 each.

11. To satisfy that obligation, beginning in or around 1995, Ross and Jamison entered into a series of joint letters of credit, each in the amount of $5 million. The letters of credit were renewed from time-to-time and frequently every year.

12. Ross and Jamison occasionally changed banks from which they obtained the joint letter of credit.

13. In or around 2012, Ross and Jamison went to The Northern Trust Co. ("Northern Trust") for their joint letter of credit. Northern Trust required a pledge of collateral to secure the letter of credit. Accordingly, Ross caused RFA, an entity he controlled and which held assets at Northern Trust, to pledge assets sufficient to secure the necessary letter of credit. As a result, that joint and several letter of credit was entered into by: (a) Ross and RFA collectively, as one of the

two jointly and severally liable parties; and (b) Jamison as the other jointly and severally liable party.

14. In 2017, Ross died and his shares in Lakeshore transferred to his estate (the "Estate"). As part of Ross's estate plan, the Edward W. Ross Revocable Trust (the "Edward Ross Trust") had the power to vote on Lakeshore matters on behalf of the Estate and to enter into agreements on behalf of the Estate relating to the Lakeshore investment.

15. In or around April 2019, the $5 million Northern Trust letter of credit was renewed. The new joint letter of credit (the "Subject Letter of Credit") was entered into by: (a) the Edward Ross Trust and RFA collectively, as one of the two jointly and severally liable parties; and (b) Jamison, as the other jointly and severally liable party. A copy of the Subject Letter of Credit is attached as Exhibit A hereto.

16. The Subject Letter of Credit was secured by assets belonging to RFA.

17. Under the terms of the Subject Letter of Credit, the beneficiary bank was JP Morgan Chase Bank in Los Angeles, California ("JP Morgan"). The Subject Letter of Credit was used to secure a line of credit that Lakeshore had obtained from JP Morgan.

18. Ultimately, the investment in Lakeshore did not work out. As a result, in or around April 2020, JP Morgan drew down the full amount of the Letter of Credit -- $5,000,000 -- from Northern Trust.

19. After Northern Trust paid the $5,000,000 to JP Morgan, Northern Trust demanded reimbursement of the $5,000,000 and a transaction fee of $7,708.33.

20. On or about April 9, 2020, RFA wired $5,007,708.33 to Northern Trust (the "Payment") to satisfy all of the joint and several obligations on the Subject Letter of Credit.

21. Thereafter, RFA requested and demanded from Jamison his proportionate one-half shares of the Payment.

22. Jamison has failed and refused to pay his share of the Payment to RFA.

### COUNT I
### (Equitable Contribution)

23. RFA realleges and incorporates by reference as if set forth fully in this Count I the allegations in paragraphs 1 through 22 above as and for this paragraph 23.

24. Pursuant to the Subject Letter of Credit, the Edward Ross Trust and RFA collectively, one of the two jointly and severally liable parties, and Jamison, the other jointly and severally liable party, had a joint and several financial obligation to Northern Trust.

25. The Subject Letter of Credit was drawn down by JP Morgan, requiring Northern Trust to pay JP Morgan $5,000,000.

26. As a result, on or about April 9, 2020, RFA made the Payment (in the amount of $5,007,708.33) to Northern Trust

27. To date, Jamison has failed and refused to pay any portion of the Payment that RFA made to Northern Trust.

28. RFA is entitled to contribution from Jamison for his proportionate one-half share of the Payment that RFA made.

WHEREFORE, RFA requests that the Court enter judgment in its favor and against Jamison, awarding it: (a) Jamison's proportionate one-half share of the Payment, *i.e.*, $2,503,854; (b) prejudgment interest from and after April 9, 2020; (c) RFA's costs and expenses of suit; and (d) such other and further relief as is appropriate.

## COUNT II
### (Unjust Enrichment)

29. RFA realleges and incorporates by reference as if set forth fully in this Count II the allegations in paragraphs 1 through 22 above as and for this paragraph 29.

30. Jamison was and is jointly and severally liable for the Payment.

31. RFA made the Payment in full.

32. Jamison wrongfully obtained and has unjustly retained the benefit of RFA having made the Payment in full.

33. Jamison had, and still has, a duty to reimburse RFA his proportionate one-half share of the Payment and has failed and refused to do so.

34. Jamison's wrongful retention of the benefit was and is to RFA's detriment.

35. Jamison's retention of that benefit violates fundamental principles of justice equity, and good conscience.

WHEREFORE, RFA requests that the Court enter judgment in its favor and against Jamison, awarding it: (a) Jamison's proportionate one-half share of the Payment, *i.e.*, $2,503,854; (b) prejudgment interest from and after April 9, 2020; (c) RFA's costs and expenses of suit; and (d) such other and further relief as is appropriate.

Respectfully submitted,

RFA INVESTORS, L.P.

By: /s/ Stephen Novack
One Of Its Attorneys

Stephen Novack
Andrew D. Campbell
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
snovack@novackmacey.com
acampbell@novackmacey.com
#1383334

5